# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

(1) GROWTECH INDUSTRIES, LLC,     )
                                         )

     Plaintiff,                    )
                                         )

v.                                    )
                                         )

(1) MARY MECHANIX, L.L.P.,      )
(2) MMX, LLC,                  )
(3) CRYDER INVESTMENTS, LLC,   )
(4) CRYDER CAPITAL, LLC,       )     Case No.  5:21-CV-841-D
(5) C. STERLING CRYDER,       )
(6) LIZA B. CRYDER,           )
(7) GUANXI DYNASTY, LLC,      )
(8) PHILIP WONG,            )
(9) CHARLES STANLEY SANER,    )
(10) RANDALL TYSON SANER,     )
(11) BDR PROCESSING, LLC,      )
(12) BRYAN RAYMER,          )
(13) QUALITY GREENS, LLC, and   )
(14) HARTSTRONG, LLC,        )
(15) STRONGHART, LLC,        )
(16) BRIAN ARMSTRONG,       )
(17) JOSEPH NEIHART,         )
(18-20) JOHN DOES 1-3.        )
                                         )

     Defendants.               )

## ORDER

Before the Court are four Motions to Dismiss, filed by Defendant Philip Wong [Doc.

No. 16], Defendants Cryder Investments, LLC, and Cryder Capital, LLC [Doc. No. 17],

Defendants Liza and Sterling Cryder [Doc. No. 18], and Defendants Charles Saner, Randall

Saner, Quality Greens, LLC, and GuanXi Dynasty, LLC, [Doc. No. 28] pursuant to Fed.

R. Civ. P. 9(b) and Fed. R. Civ. P. 12(b)(6). Plaintiff Growtech Industries, LLC, filed a

response in opposition to each motion [Doc. Nos. 31, 32, 33, 38] to which Defendants replied [Doc. Nos. 35, 36, 37, 42]. The matters are fully briefed and at issue.

## BACKGROUND

### I.   Procedural History

Plaintiff is a New York-based company that manufactures cannabox containers. These containers are used to grow and cultivate cannabis. On February 8, 2019, Defendant Mary Mechanix, LLP, entered into a sales agreement with Plaintiff for the purchase of multiple cannabox containers valued at $1,914,388.00. *See* First Am. Compl. [Doc. No. 10] at ¶ 23. Pursuant to the sales agreement, Mary Mechanix paid $1,551,444.25, leaving a balance owed of $362,943.75 (the "Balance Owed"). *Id.*

Seeking to recover the Balance Owed, Plaintiff commenced a breach of contract action against Mary Mechanix in the United States District Court for the Southern District of New York on April 14, 2020 (the "New York Action").[1] Mary Mechanix entered its appearance and filed a responsive pleading to Plaintiff's complaint, but thereafter advised the court that it was no longer defending against Plaintiff's claim. *Id.* at ¶ 24. On January 21, 2021, the court entered a default judgment (the "Foreign Judgment") in favor of Plaintiff and against Mary Mechanix in the principal amount of $362,943.75, plus additional costs and accruing interest. *Id.* at ¶ 25.

On April 23, 2021, Plaintiff proceeded to domesticate the Foreign Judgment in the District Court of Oklahoma County by filing a Notice of Filing Foreign Judgment in an

---

[1] *See Growtech Industries, LLC v. Mary Mechanix, L.L.P.*, Case No. 20-CV-3019 (S.D.N.Y.).

action styled *Growtech Industries, LLC v. Mary Mechanix, L.L.P.*, Case No. CV-2021-965 (the "Oklahoma Action"). *Id.* at ¶ 26.

On May 17, 2021, Plaintiff filed a Motion Requiring Judgment Debtor to Appear and Answer Concerning its Property and Forbidding Transfer or other Disposition of Property in the Oklahoma Action. The District Court of Oklahoma County entered Orders to Appear and Answer as to Assets and Forbidding the Transfer or Other Disposition of Property (the "Hearing on Assets") to Bryan Armstrong, Sterling Cryder, and Philip Wong as representatives of Mary Mechanix. *Id.* at ¶ 27. The Hearing on Assets took place on June 21, 2021. *Id.* at ¶ 28. Based on the testimony and evidence presented at the Hearing on Assets, Plaintiff filed suit in this Court on August 24, 2021, alleging that monies, property, assets, and other interests belonging to Mary Mechanix were improperly transferred to the named Defendants.[2]

## II.   The Movant Defendants

### a.   Philip Wong

Philip Wong is individually named as a defendant in the First Amended Complaint. He is one of three members of GuanXi Dynasty, LLC. *Id.* at ¶ 2. GuanXi Dynasty is one of two members of Mary Mechanix. *Id.* at ¶ 3.

---

[2] Defendants Philip Wong, Cryder Investments, LLC, Cryder Capital, LLC, Liza Cryder, Sterling Cryder, Charles Saner, Randall Saner, Quality Greens, LLC, and GuanXi Dynasty, LLC, are hereinafter collectively referred to as the "Movant Defendants."

### b.  Sterling Cryder, Liza Cryder, Cryder Investments, LLC, and Cryder Capital, LLC

Cryder Investments, LLC, and Cryder Capital, LLC, are each composed of two members: Sterling and Liza Cryder. Sterling and Liza Cryder are individually named as defendants in the First Amended Complaint. *Id.* at ¶¶ 4-5.

### c.  Charles Saner

Charles Saner is individually named as a defendant in the First Amended Complaint. He is one of three members of GuanXi Dynasty, LLC. *Id.* at ¶ 2. GuanXi Dynasty is one of two members of Mary Mechanix. *Id.* at ¶ 3.

### d.  Randall Saner and Quality Greens, LLC

Randall Saner is individually named as a defendant in the First Amended Complaint. He is one of three members of GuanXi Dynasty, LLC. *Id.* at ¶ 2. GuanXi Dynasty is one of two members of Mary Mechanix. *Id.* at ¶ 3. He is also the sole member of Quality Greens, LLC. *Id.* at ¶ 14.

### e.  GuanXi Dynasty, LLC

GuanXi Dynasty is one of two members of Mary Mechanix. *Id.* at ¶ 3. It is composed of three members:  Philip Wong, Randall Saner, and Charles Saner. *Id.* at ¶ 8.

## III.   The Transfers

Plaintiff alleges that certain monies, property, assets, and other interests belonging to Mary Mechanix "were improperly transferred to certain of the Defendants." *Id.* at ¶ 28. The transfers implicating the Movant Defendants include:

1.  **Mary Mechanix's** transfer and conveyance of a security interest in and to all the Cannabox Containers to **Cryder Capital, LLC**, on April 3, 2019;

4

2. **Mary Mechanix's** transfer and conveyance of all right, title, and interest in and to eleven (11) forty-foot Cannabox Containers and nine (9) twenty-foot Cannabox Containers to **Cryder Capital, LLC,** on June 2, 2020;

3. **Mary Mechanix's** transfer and conveyance of all right, title, and interest in and to several grow tents and other equipment used to cultivate cannabis to **Hartstrong, LLC,** on July 24, 2020;

4. **Mary Mechanix's** transfer and conveyance of the right to receive a $12,000 security deposit to **Hartstrong, LLC,** on July 24, 2020; and

5. **Mary Mechanix's** transfer and conveyance of all rights to lease and use various equipment used to cultivate cannabis to **BDR Processing, LLC,** on August 15, 2020;

6. **Cryder Investments, LLC's** transfer and conveyance of the right to lease and use, with an option to purchase, eleven (11) forty-foot Cannabox Containers and nine (9) twenty-foot Cannabox Containers to **Quality Greens, LLC,** on March 30, 2021;

(the "Transfers" or "Transferred Assets"); *See* First Am. Compl. at ¶ 28.

Plaintiff claims that the Transfers "were done in anticipation and/or in the face of the entry of Plaintiff's Judgment, and for the purpose of avoiding the payment of that and other obligations owed to Plaintiff." *Id.* at ¶ 29. The Movant Defendants allege that Plaintiff's First Amended Complaint is composed of broad, non-specific, and conclusory allegations. *See* [Doc. No. 16] at p. 2; [Doc. No. 17] at pp. 7-8; [Doc. No. 18] at p. 14; [Doc. No. 28] at p. 20. [3]

### STANDARD OF DECISION

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain enough facts that, when accepted as true, "state a claim to relief that is plausible on its

---

[3] Defendants Charles Saner, Randall Saner, Quality Greens, LLC, and GuanXi Dynasty, LLC, additionally argue that the action should be dismissed because it covers the same issues as the Oklahoma Action. *See* [Doc. No. 28] at p. 6. The Court rejects this argument, as the Oklahoma Action was a domestication proceeding and does not seek to hold the defendants liable for fraudulent transfer or civil conspiracy.

face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). A claim has facial plausibility when the court can draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In assessing plausibility, a court should first disregard conclusory allegations and "next consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 681.

Allegations of fraud are governed by the heightened pleading requirements of Fed. R. Civ. P. 9(b), which provides, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Id.* The purpose of Rule 9(b) is "to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992).

In fraud cases, it is insufficient for a pleader to generally outline the nature of the pleader's claim. Rather, the complaint must "set forth the who, what, when, where and how of the alleged fraud, and must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield*, 472 F.3d 702, 726–27 (10th Cir. 2006) (internal quotations and citations omitted). Courts generally review only the text of the complaint to determine if the factual allegations satisfy Rule 9(b). *Id.* at 726.

**DISCUSSION**

**I.    Count I: Avoidance of Fraudulent Transfer Claim**

Plaintiff alleges that Mary Mechanix, in concert with one or more of the other named Defendants, acted with "actual and constructive intent to hinder, delay, and defraud Plaintiff and to prevent Plaintiff from collecting its Judgment." First Am. Compl. [Doc. No. 10] at ¶ 31. Plaintiff asserts that the Transfers contributed to Mary Mechanix's insolvency, as the Transferred Assets represented a substantial portion of Mary Mechanix's remaining assets available to satisfy the Foreign Judgment. *Id.* at ¶ 34. Plaintiff claims that the Transfers (1) were not made in the ordinary course of business; (2) were not arms-length transactions for value; and (3) were carried out in anticipation of or subsequent to the entry of the Foreign Judgment. *Id.* at ¶ 32. As a result, Plaintiff seeks relief pursuant to the Uniform Fraudulent Transfer Act (the "UFTA"). *See* Okla. Stat. tit. 24, § 112, *et seq.*

The UFTA's purpose "is to allow a creditor the opportunity to invalidate a transfer of assets made by a debtor if the transfer has the effect of placing the assets out of the reach of present and future creditors." *Farm Credit Bank of Wichita v. Woodring*, 851 P.2d 532, 538 (Okla. 1993). Under the UFTA

> A. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> > 1. With actual intent to hinder, delay, or defraud any creditor of the debtor;[4] or

---

[4] To determine actual intent, a court may consider the factors set forth in Okla. Stat. tit. 24, § 116(B), including whether: (1) The transfer or obligation was to an insider; (2) The debtor retained possession or control of the property transferred after the transfer; (3) The transfer or obligation was disclosed or concealed; (4) Before the transfer was made or obligation

> 2. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>> a. was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or
>> b. intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

Okla. Stat. tit. 24, § 116(A). Under the UFTA, a judgment may be entered against: "(1) [t]he first transferee of the asset or the person for whose benefit the transfer was made; or (2) [a]ny subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee." Okla. Stat. tit. 24, § 120(B).

The Tenth Circuit has not addressed whether Fed. R. Civ. P. 9(b) applies to claims brought pursuant to the UFTA.[5] But the Court need not conclusively resolve this issue here; Plaintiff's claim survives even under Rule 9(b)'s heightened pleading requirements.

---

was incurred, the debtor had been sued or threatened with suit; (5) The transfer was of substantially all the debtor's assets; (6) The debtor absconded; (7) The debtor removed or concealed assets; (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. Courts refer to these factors, as "badges of fraud." *See Land O'Lakes Inc. v. Schaefer*, 3 F. App'x 769, 772 (10th Cir. 2001); *see also In re Taylor*, 133 F.3d 1336, 1338 (10th Cir. 1998).

[5] Lower courts have historically declined to apply Rule 9(b) to cases alleging constructive fraud. *See In re Actrade Fin. Techs. Ltd.*, 337 B.R. 791, 801 (Bankr. S.D.N.Y. 2005) (listing cases in which courts have held that Rule 9(b) does not apply to causes of action based on constructive fraud). However, courts generally apply Rule 9(b) to claims alleging actual fraud. *See Stoebner v. Opportunity Fin. LLC*, 909 F.3d 219, 225, 226 n.6 (8th Cir. 2018) (holding that Rule 9(b) applies to the Minnesota Uniform Transfer Act); *see also In re Tronox*, 429 B.R. 73, 93-94 (Bankr. S.D.N.Y. 2010) (applying Oklahoma law and

Setting forth a detailed timeline of Transfers carried out by the Movant Defendants, Plaintiff sets forth several badges of fraud which plausibly indicate an intent to hinder, delay, or defraud Plaintiff under Okla. Stat. tit. 24, § 116(A)(1). In addition, Plaintiff alleges that these Transfers were not transactions for value and contributed to Mary Mechanix's insolvency, which is consistent with Okla. Stat. tit. 24, § 116(A)(2). Accepting Plaintiff's allegations as true and drawing all reasonable inferences in its favor, the Court concludes that the allegations contained within the First Amended Complaint set forth sufficient facts to put the Movant Defendants on notice of the fraudulent transfer claim.

### a. Okla. Stat. tit. 24, § 116(A)(1)

Mary Mechanix allegedly initiated several transfers shortly after the New York Action commenced on April 14, 2020, consistent with the badge of fraud set forth in Okla. Stat. tit. 24, § 116(B)(4), which states "[b]efore the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit."

On June 2, 2020, Mary Mechanix transferred all of its right, title, and interest in twenty cannabox containers to Cryder Capital, LLC. [6] As discussed, Mary Mechanix is

---

determining that "Rule 9(b) requires that the fraudulent intent that must be established under § 116 of the Oklahoma UFTA be pled with specificity").

[6] Defendants Cryder Capital, LLC, and Cryder Investments, LLC, assert that the June 2, 2020, transfer resulted from the enforcement of a valid security interest and is not voidable under Okla. Stat. tit. 24, § 120(E), which states that a transfer is not voidable under the UFTA "if the transfer results from . . . [the] enforcement of a security interest in compliance with Article 9 of the Uniform Commercial Code." Although the UFTA does not apply to transfers pursuant to valid security interests, it does prohibit the fraudulent creation of security interests as a way of fraudulently transferring property. *See* Okla. Stat. tit. 24, § 113 (defining "transfer" as any mode of disposing of an asset or interest in an asset, including the creation of a lien or other encumbrance); *see also Derma Pen, LLC v. 4EverYoung Ltd.*, 737 F. App'x 396, 403 (10th Cir. 2018).

composed of two members, including GuanXi Dynasty, LLC, whose members include Philip Wong, Randall Saner, and Charles Saner, while Cryder Capital, LLC's, members are Sterling and Liza Cryder.[7]

Shortly after the June 2, 2020, transfer, Mary Mechanix initiated three more transfers: (1) a transfer of its right, title, and interest in and to several grow tents and other equipment used to cultivate cannabis to Hartstrong, LLC, on July 24, 2020; (2) a transfer of the right to receive a $12,000 security deposit to Hartstrong, LLC, on July 24, 2020; and (3) a transfer of all rights to lease and use various equipment used to cultivate cannabis to BDR Processing, LLC, on August 15, 2020. These transfers are consistent with the badge of fraud enumerated in Okla. Stat. tit. 24, § 116(B)(4), as they all occurred shortly after the New York Action commenced.

A second badge of fraud, set forth in Okla. Stat. tit. 21, § 116(B)(6), is also present. *See* Okla. Stat. tit. 21, § 116(a)(6) (articulating a badge of fraud as "[t]he debtor abscond[ing]"). Pointing to the default judgment entered in the New York Action, Plaintiff asserts that Mary Mechanix absconded. *See* First Am. Compl. [Doc. No. 10] at ¶¶ 24, 34 ("Mary Mechanix advised the Court that it was no longer going to defend against Plaintiff's claims in the New York Action."). Mary Mechanix's failure to defend in the New York Action—after initially filing a responsive pleading to Plaintiff's complaint—appears consistent with the badge of fraud set forth in Okla. Stat. tit. 24, § 116(B)(6).

---

[7] Cryder Investments, LLC, whose members are Sterling and Liza Cryder, subsequently transferred the right to lease and use the cannabox containers to Quality Greens, LLC—whose sole member is Randall Saner—on March 30, 2021. *See* First Am. Compl. at ¶ 28.

Turning to Okla. Stat. tit. 24, § 116(B)(9), Petitioner alleges activity that is also consistent with a third badge of fraud. *See* Okla. Stat. tit. 24, § 116(B)(9) ("The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred."). In its First Amended Complaint, Plaintiff alleges that the respective values of the Transferred Assets contributed to Mary Mechanix's insolvency. *See* First Am. Compl. [Doc. No. 10] at ¶ 34 ("[T]hese Transferred Assets were of significant value . . . and represented a substantial portion of [Mary Mechanix's] remaining assets and resources available for the satisfaction of the Judgment . . . [and] the transfer of these Assets may have contributed to the insolvency of [Mary Mechanix].").

Finally, the First Amended Complaint sets forth a fourth badge of fraud, consistent with Okla. Stat. tit. 24, § 116(B)(10). *See* Okla. Stat. tit. 24, § 116(B)(10) ("The transfer occurred shortly before or shortly after a substantial debt was incurred."). As alleged in the First Amended Complaint, the initial transfer of the security interest from Mary Mechanix to Cryder Capital, LLC, occurred on April 13, 2019, shortly after Mary Mechanix incurred a substantial debt in the form of the Balance Owed to Plaintiff. As discussed, additional transfers followed on June 2, 2020, July 24, 2020, and August 15, 2020. That these Transfers transpired after a substantial debt was incurred is consistent with the badge of fraud set forth in Okla. Stat. tit. 24, § 116(B)(10).

Plaintiff, in its First Amended Complaint, sets forth activity that is consistent with at least four badges of fraud. This activity involved the Movant Defendants, and is indicative of an intent to hinder, delay, or defraud Plaintiff under Okla. Stat. tit. 24, § 116(A)(1). *See Land O' Lakes, Inc. v. Schaefer*, 3 F. App'x 769, 772 (10th Cir. 2001)

11

(citing *Payne v. Gilmore*, 382 P.2d 140, 143 (Okla. 1963)) ("A single badge of fraud may stamp the transaction as fraudulent . . . when several are found in combination, strong and clear evidence on the part of the upholder of the transaction will be required to repel the conclusion of fraud."); *see also Taylor v. Rupp*, 133 F.3d 1336, 1339 (10th Cir. 1998) ("When one or more of these badges [listed in the UFTA] are present, fraudulent intent can be inferred.").

### b.  Okla. Stat. tit. 24, § 116(A)(2)

Under Okla. Stat. tit. 24, § 116(A)(2), a transfer by a debtor is fraudulent as to a creditor if the debtor made the transfer "without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor . . . intended to incur, or believed or reasonably should have believed that [it] would incur, debts beyond [its] ability to pay as they became due."

In addition to the badges of fraud implicated by Plaintiff's complaint, Plaintiff also alleges that (1) these Transfers were not transactions for value, and (2) Mary Mechanix intended to incur debts beyond its ability to pay as they became due. *See* First Am. Compl. [Doc. No. 10] at ¶ 32 (The Transfers were not "transaction[s] for value" and were made "in anticipation of, during the pendency, and/or after the entry of the Judgment."). These allegations are consistent with Okla. Stat. tit. 24, § 116(A)(2)—the Transfers were allegedly not transactions for value and have prevented Mary Mechanix from satisfying the Foreign Judgment.

### c.  Okla. Stat. tit. 18, § 2022 and Okla. Stat. tit. 12, § 682(B)

Pointing to Okla. Stat. tit. 18, § 2022 and Okla. Stat. tit. 12, § 682(B), Philip Wong, Sterling Cryder, Liza Cryder, Charles Saner, and Randall Saner (the "Individual Defendants") claim that they cannot be held individually liable based only on their respective memberships within GuanXi Dynasty, LLC, Cryder Investments, LLC, Cryder Capital, LLC, and Quality Greens, LLC. *See* [Doc. No. 18] at pp. 20-22; [Doc. No. 35] at pp. 2-4; [Doc. No. 28] at pp. 30-31. Indeed, under Okla. Stat. tit. 18, § 2022, "a person who is a member or manager, or both, of a limited liability company is not liable for the obligations of the limited liability company solely by reason of being such member or manager or both." And under Okla. Stat. tit. 12, § 682(B):

> No suit or claim of any nature shall be brought against any officer, director or shareholder for the debt or liability of a corporation of which he or she is an officer, director or shareholder, until judgment is obtained therefor against the corporation and execution thereon returned unsatisfied. This provision includes, but is not limited to, claims based on vicarious liability and alter ego.[8]

But these protections do not apply when an individual is being sued for his or her own wrongful conduct. With respect to Okla. Stat. tit. 18 § 2022, "a manager of a limited liability company is liable for '[a]cts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law.'" *See, e.g., MTG Guarniere Mfg.,*

---

[8] Under Okla. Stat. tit. 12, § 682(D)(1), members and managers of limited liability companies are "afforded the same substantive and procedural protection from suits and claims as the protections provided to officers, directors and shareholders of a corporation as set forth in subsection B."

13

*Inc. v. Clouatre*, 239 P.3d 202, 214 (Okla. Civ. App. 2010) (quoting Okla. Stat. tit. 18 §

2017(B)(2)).

Nor does Okla. Stat. tit. 12, § 682(B) prohibit "a suit or claim against an officer,

director or shareholder for their own conduct, act or contractual obligation, not within the

scope of their role as an officer, director or shareholder, arising out of or in connection with

their direct involvement in the same or related transaction or occurrence." Okla. Stat. tit.

12, § 682(B); *see also Saunders v. Mangum Nursing Center, LLC*, 377 P.3d 180, 184 (Okla.

Civ. App. 2016) ("Oklahoma law does not prohibit a suit based on an officer's . . . direct

involvement with the transaction or occurrence at the heart of the lawsuit."); *Fanning v.*

*Brown*, 85 P.3d 841, 846 (Okla. 2004) ("Courts may disregard the corporate entity . . .

under the legal doctrines of fraud, alter ego and when necessary to protect the rights of

third persons and accomplish justice.").

Drawing all reasonable inferences in Plaintiff's favor, the Court finds that the First

Amended Complaint sets forth facts that plausibly support recovery against the Individual

Defendants based on their respective positions within the entities through which the alleged

improper transfers were carried out. Plaintiff sets forth a detailed timeline of specific

transfers carried out by Mary Mechanix, Cryder Capital, Cryder Investments, and Quality

Greens. Philip Wong, Randall Saner, and Charles Saner are partners in GuanXi Dynasty—

an entity that controls Mary Mechanix in part. Sterling Cryder and Liza Cryder are

members of Cryder Capital, LLC—an entity that Mary Mechanix transferred twenty

cannabox containers to, and Cryder Investments, LLC, an entity that subsequently

transferred a right to lease and use those cannabox containers to Quality Greens, LLC, whose sole member is Randall Saner.

Ultimately, factual development may prove that the UFTA claim against the Individual Defendants cannot stand. However, at this juncture, such a determination is premature. *See, e.g., Tyree v. Cornman*, 453 P.3d 497 (Okla. Civ. App. 2019) ("Whether the conduct alleged by the plaintiffs was or was not within the scope of [the individual defendant's] role as an officer, director or shareholder of [the defendant corporation] cannot be determined at the pleading stage.").

## II. Count II: Civil Conspiracy

Plaintiff alleges that Defendants "entered into an agreement to give, transfer, lease, or convey the Transferred Assets to Defendants for the purpose of benefitting themselves, protecting their own interests, and preventing Plaintiff from collecting its Judgment." First Am. Compl. [Doc. No. 10] at ¶ 38. It claims that such an agreement to fraudulently transfer the Transferred Assets constitutes a civil conspiracy. *Id.*

Under Oklahoma law, to state a claim for civil conspiracy, a plaintiff must plead the following elements: "1) two or more persons; 2) an object to be accomplished; 3) a meeting of the minds on the object or course of action; 4) one or more unlawful, overt acts; and 5) damages as the proximate result." *See Schovanec v. Archdiocese of Okla. City*, 188 P.3d 158, 175 (Okla. 2008) (internal quotation omitted). Standing alone, civil conspiracy does not create liability; an underlying tortious act is required. *Brock v. Thompson*, 948 P.2d 297, 294 (Okla. 1997). A claim brought pursuant to the UFTA may serve as an underlying tortious act necessary to bring a civil conspiracy claim. *See Factory Direct, Inc. v.*

*Anatomic Global, Inc.*, No. CIV-11-59, 2012 WL 13024061, at *5 (W.D. Okla. Apr. 23, 2012); *FIMCO, Inc. v. Wootton New Holland, LLC*, No. CIV-16-1323, 2017 WL 1067798, at *5 (W.D. Okla. Mar. 21, 2017).

Conspiracy is frequently proven with circumstantial evidence; rarely is there "direct evidence of an express agreement among all the conspirators to conspire." *Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir. 1990). A plaintiff is not required to present a 'formal agreement' to support a conspiracy claim. *Norfolk Monument Co. v. Woodlawn Mem'l Gardens, Inc.*, 394 U.S. 700, 704 (1969). Rather, certain "business behavior is admissible circumstantial evidence from which the fact finder may infer agreement." *Id.*; *see also S. Concrete Prods., Inc. v. Liberty Holdings, LP*, No. 19-1105, 2019 WL 7758860, at *5 (W.D. Tenn. Sept. 12, 2019) (holding that a civil conspiracy claim was sufficiently pled when plaintiff alleged defendant made a series of transactions to transfer assets to avoid creditor claims and thereafter failed to pay debt owed to plaintiff).

Moreover, when the facts are "peculiarly within the perpetrator's knowledge," the pleading standard is relaxed. *See Energy Fluids, Inc. v. Cimarex Energy Co.*, No. 7-CIV-653, 2008 WL 2404226, at *6 (W.D. Okla. June 10, 2008) (holding that, when board members "conducted meetings informally and kept no written records of their decisions," plaintiff was not required to plead with significant detail). Here, the discussions and decisions regarding the Transfers are peculiarly within Defendants' knowledge. Philip Wong, Liza Cryder, Sterling Cryder, Charles Saner, and Randall Saner are each members or partners of the entities that allegedly orchestrated the Transfers, indicating that each was in a position of knowledge concerning the Transfers. Plaintiff is not required to prove the

16

"exact limits of the illegal plan or the identity of all participants therein." *Frasier v. Evans*, 992 F.3d 1003, 1024-25 (10th Cir. 2021).

The alleged fraudulent transfers and conspiracy to defraud Plaintiff involved the participation of Philip Wong, Liza Cryder, Sterling Cryder, Charles Saner, and Randall Saner, by and through Mary Mechanix, Cryder Investments, Cryder Capital, GuanXi Dynasty, and Quality Greens, all of which were allegedly interrelated. Thus, the Court finds that the First Amended Complaint plausibly asserts a claim for civil conspiracy against the Movant Defendants.

## III.    Count III: Constructive Trust/Disgorgement

Next, the Court turns to Plaintiff's Constructive Trust/Disgorgement cause of action. It is a well-settled rule that "[a] constructive trust is a remedial device used by courts to enforce substantive rights . . . it is not itself a substantive right." *Howell Petroleum Corp. v. Samson Res. Co.*, 903 F.2d 778, 780 (10th Cir. 1990) (applying Oklahoma law). Disgorgement is likewise an equitable remedy, not an independent cause of action. *See Hitch Enterprises, Inc. v. Cimarex Energy Co.*, 859 F.Supp.2d 1249, 1253 (W.D. Okla. 2012).

In its First Amended Complaint, Plaintiff has mislabeled its requests that the Court "impose a constructive trust" and/or "require the disgorgement of income, money, or other benefit"—both of which are forms of relief—as independent causes of action. *See* First Am. Compl. [Doc. No. 10] at ¶¶ 40-42. Demands for relief should be included within the section of the complaint titled "Prayer for Relief." Therefore, Count III of the First

Amended Complaint must be dismissed without prejudice. Plaintiff may amend its complaint to include its request for relief in the appropriate section.

## IV.   Count IV: Injunctive Relief

Count IV suffers from the same deficiency that Count III does, as Plaintiff again mislabels a remedial request—injunctive relief—as a separate cause of action. *See* First Am. Compl. [Doc. No. 10] at ¶¶ 43-47. As with Plaintiff's constructive trust/disgorgement "claim," Plaintiff's claim for injunctive relief is not an independent cause of action. *See CPS Transp., LLC v. Sloan*, 611 F. App'x 931, 933 (10th Cir. 2015) ("[H]owever they are pleaded, different remedial requests do not make for different claims."); *see also Renfro v. City of Bartlesville*, No. 12-CV-208-GKF-PJC, 2012 WL 5996376, at * 15 (N.D. Okla. Nov. 30, 2012) (a claim for injunctive relief is a remedy, not a substantive claim).

Because demands for relief should be included within the section of the complaint titled "Prayer for Relief," Count IV of the First Amended Complaint must be dismissed without prejudice. Plaintiff may amend its complaint to include its request for relief in the appropriate section.

## CONCLUSION

For these reasons, the Court **DENIES** the Motions to Dismiss filed by Defendant Philip Wong [Doc. No. 16], Defendants Cryder Investments, LLC and Cryder Capital, LLC [Doc. No. 17], Defendants Liza and Sterling Cryder [Doc. No. 18], and Defendants Charles Saner, Randall Saner, Quality Greens, LLC, and GuanXi Dynasty, LLC [Doc. No. 28] with respect to Counts I and II of Plaintiff's First Amended Complaint. Counts III and IV are **DISMISSED WITHOUT PREJUDICE** to amending and re-filing.

**IT IS SO ORDERED** this 26th day of September, 2022.

TIMOTHY D. DeGIUSTI
Chief United States District Judge